NO. 07-03-0042-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 7, 2004

_____

CITY OF LUBBOCK, TEXAS, APPELLANT

v.

JIM ADAMS, ET AL., APPELLEES

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-514,237; HON. WILLIAM C. DODSON, PRESIDING

_____

Before JOHNSON, C.J., REAVIS, J., and BOYD, SJ.[1]

**OPINION**

This is an appeal from a judgment in favor of appellees Jim Adams and numerous other fire fighters against appellant the City of Lubbock (the City). In its judgment, the trial court denied the City's plea to the jurisdiction and motion for summary judgment and granted appellees' motion for partial summary judgment. In doing so, the trial court found

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004-05).

that the City had failed to comply with section 143.038 of the Texas Local Government Code by failing to pay appellees seniority pay increments during the time they were temporarily assigned duties to be performed in a higher job classification, enjoined the City from failing to pay the seniority job increments while appellees were performing higher classified duties, and ordered the City to pay each appellee an amount equal to the hourly seniority pay increments for all hours spent temporarily performing higher classified duties from the period from June 15, 1997, to the date the City modifies its pay system to comply with the trial court's final judgment.

In mounting its challenge, the City presents three issues for our decision. Those issues are:

1. The trial court had no jurisdiction because the City had not waived its immunity from suit for the issues raised by appellees' suit;

2. The trial court erred when it determined the City had improperly paid its fire fighters pursuant to section 143.038(b) of the Local Government Code;

3. The City pays its fire fighters properly under section 143.041 of the Local Government Code.

For the following reasons, we reverse the judgment of the trial court and render judgment in favor of the City.

Although the trial court's resolution of them is in vigorous dispute, the facts giving rise to this suit are, in the main, uncontested. It is undisputed that the City is a home rule municipality and appellees are civil service employees governed by Chapter 143 of the Local Government Code (the Code). Pursuant to section 143.021(a) of the Code, the City

2

is required to establish each firefighter classification by ordinance. Tex. Loc. Gov't Code Ann. §143.021(a) (Vernon 1999). The City has established six separate classifications of firefighters, which range from the Grade 6 classification of Fire Fighter to the Grade 1 classification of Deputy Chief. Section 143.041 of the Code requires a covered municipality to pay all firefighters within the same classification the same base salary and authorizes certain salary supplements, including, as material here, " longevity or seniority" pay. *See id.* §§ 143.041(b) & (c)(1).

Each of the firefighter classifications, with the exception of the Grade 6 classification, has three pay steps labeled"A","B", and "C." The Grade 6 classification has these three steps plus one additional step which is labeled "D." An employee moves from step to step based upon the length of time the employee has been employed within the particular classification. It is also undisputed that as the employee moves from step to step, the employee receives an additional increase in salary and the difference between the "A" step pay and the additional pay received as the employee moves up the step classification constitutes the employee's "seniority" pay. It is additionally undisputed that as the employee moves permanently to a higher classification, the employee is automatically placed in step "A" in that classification, regardless of how long the period of employment in the lower classification. The length of service in the department is not considered in determining the "seniority" pay.

From time to time, temporary vacancies occur within the fire department because of absences due to such things as sick leave, vacations, and holiday time. Those temporary vacancies are filled by temporary, or "move up" assignments. During the time

3

an employee temporarily assumes the duties of the higher classification, the City pays the employee only the step "A" base pay for the work performed in the higher classification. The dispute giving rise to this lawsuit arises because the appellees contend that in addition to the higher base pay, the City should also pay the lower classification "seniority" pay the employee would otherwise have earned during the period of the assignment.

Jurisdiction

It is axiomatic that subject matter jurisdiction is essential for any court to have the authority to resolve a dispute. *Tex. Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). This means that a plaintiff has the burden to plead facts affirmatively showing that the trial court has subject matter jurisdiction. *Id.* at 446. Because jurisdiction is a question of law, we review the trial court's ruling on that question *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). In conducting our *de novo* review, we do not look at the merits of a plaintiff's case, but we consider only the plaintiff's pleadings and any evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dept. of Transportation v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002).

Sovereign immunity protects the State, its agencies and officials, and its political subdivisions from suit unless immunity from suit has been waived. *General Services v. Little-Tex Insulation,* 39 S.W.3d 591, 594 (Tex. 2001), *overruled on other grounds by Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004). The sovereign

4

immunity of the State inures to the benefit of a municipality insofar as the municipality engages in the exercise of governmental functions, except when that immunity has been waived. *See Fort Worth Ind. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000); *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex. 1997). A plaintiff has the burden to establish a waiver of immunity from suit. *Tex. Dep't of Transportation v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Immunity from suit can only be waived by legislative consent or constitutional amendment, and any such waiver must be expressed in clear and unambiguous language. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003); *Travis County v. Pelzel & Assocs. Inc.,* 77 S.W.3d 246, 248 (Tex. 2002)*; Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 854 (Tex. 2002); *see also* Tex. Gov't Code Ann. §311.034 (Vernon Supp. 2004-2005) (providing that "[i]n order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language").

In response to the City's jurisdictional challenge, appellees contend that its immunity from suit is waived by what they reason is the clear and unambiguous language of section 51.075 of the Code which states, "[t]he municipality may plead and be impleaded in any court." Tex. Loc. Gov't Code Ann. §51.075 (Vernon 1999). This contention is buttressed, they argue, by the undisputed fact that the City is a home rule municipality whose own city charter gives it authority to "sue and be sued," and to "plead and be impleaded in all courts and places and in all matters whatever." *See* Lubbock City Charter, Art. II, §1. Thus, we

5

must first determine whether the language of either the City's charter or section 51.075 clearly and unambiguously waives the City's immunity from suit.

With regard to the "sue and be sued" language found in the City's charter, we believe that the determination made by our Supreme Court in *Missouri Pacific Railroad Co. v. Brownsville Navigation District*, 453 S.W.2d 812 (Tex. 1970) is significant and determinative. In that decision, the Court held that a statute which provides that a state entity can "sue and be sued" complies with the legislative permission requirement waiving immunity from suit. *Id.* at 813. Our conclusion requires a discussion of the case.

The case arose from an incident in which a brakeman for the Missouri Pacific Railroad died after being knocked from a train ladder by a crane that had been left too close to the track. The brakeman's beneficiaries filed suit against the Missouri Pacific Railroad which, in turn, sought indemnity from the Brownsville Navigation District. The railroad's indemnity claim was based upon a contract between the railroad and the navigation district, which prohibited the district from allowing certain objects to be placed close to the railroad track. The trial court had granted the district's plea to the jurisdiction on the basis that the district was a subdivision of the state and the requisite consent had not been given. That holding was affirmed by the Court of Civil Appeals.

However, the Supreme Court, in the course of its opinion reversing the lower court, noted that the navigation district was governed by a provision of a 1925 act which provided that all navigation districts created under the act, acting by and through its commissioners, had the power to "sue and be sued in all courts of this State in the name of such navigation

6

district." *Id.* at 813. At issue was whether the phrase *sue and be sued in all courts of the state* was a waiver of the district's immunity from suit. In reversing the lower court, the Supreme Court opined that "[i]n our opinion [the navigation district statute] is quite plain and gives general consent for [the] District to be sued in the courts of Texas in the same manner as other defendants." *Id.*

The majority of our intermediate appellate courts who have considered the question have regarded *Missouri Pacific* as binding precedent and that similar "sue and be sued" provisions supply the requisite consent to sue the government entity involved. *See, e.g., United Water Services, Inc. v. City of Houston*, 137 S.W.3d 747, 755 (Tex. App.--Houston [1st Dist.] 2004, pet. filed) (city charter clearly waived city's immunity from suit); *Alamo Cmty. College Dist. v. Browning Constr. Co.,* 131 S.W.3d 146, 152-53 (Tex. App.--San Antonio 2004, pet. filed) (holding that "sue and be sued" language in Education Code subsection 11.151(a) waives immunity from suit); *Goerlitz v. City of Midland*, 101 S.W.3d 573, 577 (Tex. App.--El Paso 2003, pet. filed) (holding that "sue and be sued" waived immunity from suit); *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 449 (Tex. App.--Fort Worth 2001, no pet.) (holding Health Code subsection 281.056(a) "sue and be sued" language waived immunity from suit); *Bates v. Tex. State Tech. College,* 983 S.W.2d 821, 827 (Tex. App.--Waco 1998, pet. denied) (holding that Education Code section 135.55, which states that "board may sue and be sued" grants consent to sue Texas State Technical College); *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 348 (Tex. App.--Corpus Christi 1997, pet. denied) (concluding that "sue and be sued" language in Water Code section 58.098 "provided clear and unambiguous consent for the Irrigation

District to be sued"); *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 122 (Tex. App.--Houston [14th Dist.) 1997, no pet.) (holding Water Code provision stating that water district could sue and be sued waived immunity from suit); *Knowles v. City of Granbury*, 953 S.W.2d 19, 23 (Tex. App.--Fort Worth 1997, pet. denied) (holding that the city's charter providing that it "may sue and be sued" waived its immunity from suit).

We recognize there is a divergence of opinion among the courts of appeals in Texas, with a minority of them differing with our conclusion that the *Missouri Pacific* "sue and be sued" ruling is binding precedent in instances such as that before us. *See, e.g., City of Dallas v. Reata Constr. Co.,* 83 S.W.3d 392, 398 (Tex. App.--Dallas 2002), *rev'd on other grounds,* No. 02-1031, slip op., 2004 Tex. LEXIS 303 (Tex. April 2, 2004); *Jackson v. City of Galveston,* 837 S.W.2d 868, 871 (Tex. App.--Houston [14th Dist.] 1992, writ denied); *Townsend v. Memorial Med. Center*, 529 S.W.2d 264, 267 (Tex. Civ. App.--Corpus Christi 1975, writ ref'd n.r.e.); *Childs v. Greenville Hosp. Auth.,* 479 S.W.2d 399, 401 (Tex. Civ. App.--Texarkana 1972, writ ref'd n.r.e.). However, the majority of the courts of appeals that have considered the question agree that the Supreme Court holding in *Missouri Pacific* that "sue and be sued" language, such as that before us, "quite plain[ly]" waives consent and "gives general consent" for the governmental agency to be sued. *Missouri Pacific*, 453 S.W.2d at 813 -14.

In arriving at our decision, we have not overlooked the City's additional argument that the "sue and be sued" language found in its charter is distinguishable from the "sue and be sued" language found in *Missouri Pacific* and from other provisions that have been

held to waive immunity from suit. Specifically, the City relies upon the language that appears in the last provision of the City Charter, Article II, Section 1, stating that it ". . . shall be subject to all the duties and obligations now pertaining to or incumbent upon said city as a corporation, not in conflict with the provisions of this Charter, and shall enjoy all the rights, immunities, powers, privileges and franchises now possessed by said City and herein conferred and granted." Supporting this argument, the City argues that the City Charter never mentions the word "waiver" and the only time it mentions the word "immunities" is where it retains them. Additionally, it reasons that the provision in question is included in the section of the Charter that speaks to its corporate power and legal existence which would have nothing to do with a waiver of sovereign immunity. We disagree with that premise, believing that the language expressing the City has the power to "sue and be sued" is quite clear, unambiguous and is within the purview of the *Missouri Pacific* teaching. Accordingly, because the trial court had jurisdiction to consider the dispute, the City's first issue is overruled.

## Discussion

In its second issue, the City contends the trial court erred when it determined that the City had improperly paid its firefighters pursuant to section 143.038(b) of the Local Government Code. That section provides:

> (B) The department head may designate a person from the next lower classification to temporarily fill a position in a higher classification. The designated person is entitled to the base salary of the higher position plus the person's own longevity or seniority pay, educational incentive pay, and certification pay during the time the person performs the duties.

Tex. Loc. Gov't Code Ann. §143.038(b) (Vernon 1999). In considering this issue, it is necessary to note other relevant portions of the Code. Section 143.041(b) & (c)(1) provides:

> (b) Except as provided by Section 143.038, all fire fighters or police officers in the same classification are entitled to the same base salary.
>
> (c) In addition to the base salary, each fire fighter or police officer is entitled to each of the following types of pay, if applicable:
>
> > (1) longevity or seniority.

Id. §143.041(b) & (c)(1). Section 141.032(b) of the Code reads:

> . . . . each member of the fire or police department is entitled to receive, in addition to all other money paid for services rendered in the department, longevity pay of $4 a month for each year of service in the department, not to exceed 25 years.

Id. §141.032.

In support of this issue, the City argues that in addition to the "longevity" pay for service with the department required under section 141.032 of the Code, which it pays, it has also voluntarily established a system by which it pays its firefighters "seniority" pay for service within a classification. It reasons that although the payment of such "seniority" pay is permitted by virtue of section 143.041 of the Code, it is not required under any provision of the Code, nor is there any definition or any standard method in the Code for establishing such a "seniority" pay system. That being true, it posits, each city is free to establish its own method of compensating its firefighters and police officers for "seniority pay" if it desires to authorize such pay. It also emphasizes that the method utilized by the City in

allocating such voluntary "seniority pay" is referable to service within a classification, as contrasted to the required "longevity" pay, which is referable to service with the department. The City additionally argues that if appellees' argument be accepted, it would lead to the unfair result that persons temporarily assigned would be paid more than those permanently assigned to the higher classifications.

The thrust of the City's argument is that section 143.038(b) of the Code, which permits the temporary assignment of employees to higher classification, "clearly provides" that, in addition to the base pay of the position, such employees are entitled to "longevity or seniority pay" but not both, and inasmuch as it continues to pay departmental longevity pay, appellees are not entitled to the seniority pay they claim.

In response, appellees challenge the argument that "longevity" pay and "seniority" pay are two separate and disparate types of compensation. They argue that the two terms are in reality synonymous terms describing the same type of pay increment to which they are entitled. Resolution of this argument is crucial to the disposition of the City's second issue and requires a construction of the term "longevity or seniority" pay.

Issues of statutory construction are questions of law to be decided by the court rather than questions of fact. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). In the Code Construction Act, Chapter 311 of the Government Code, we are instructed that "[w]ords and phrases shall be read in context and construed according to rules of grammar and common usage" and that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be

construed accordingly." Tex. Gov't Code Ann. § 311.011 (Vernon 1998). The City argues, and we agree, that we should look first to the words themselves to determine the legislative intent. The City then reasons that although the term "longevity pay" is not specifically defined in section 143.038 of the Code, it should be given the same limited meaning as that assigned in section 141.032, namely, that it is compensation for time served in the *department* rather than time served in a particular classification and seniority time in a classification is something different. It also argues that the statute as written is unambiguous and requires a conclusion that the City only had to pay the plaintiffs longevity "or" seniority pay when they were performing temporary duties in higher classifications.

The crux of the question presented is whether the term "or" as used in the statute is conjunctive, referring to a synonymous term as contended by appellees, or is disjunctive and is used to indicate a separate term as contended by the City. Dictionary definitions of "or" are somewhat helpful in making our decision. For example, in Black's Law Dictionary, the term "or" is defined as:

> A disjunctive particle used to express an alternative or to give a choice of one among two or more things. It is also used to clarify what has already been said, and in such cases, means "in other words", "to-wit," or "that is to say." The word "or" is to be used as a function word to indicate an alternative between different or unlike things. [Citation omitted]. In some usages, the word "or" creates a multiple rather than an alternative obligation; where necessary in interpreting an instrument, "or" may be construed to mean "and." [Citation omitted].

BLACK'S LAW DICTIONARY 1095 (6th ed. 1990). In Merriam-Webster's Collegiate Dictionary, the term is defined as:

1.- used as a function word to indicate an alternative (coffee-tea) (sink-swim), the equivalent or substitutive character of two words or phrases (lessen-abate), or approximation or uncertainty (in five–six days).

MERRIAM-WEBSTER COLLEGIATE DICTIONARY 872 (11th ed. 2003).

We are compelled to the conclusion that the term "or" as used in the statute is used in the disjunctive sense. To accept appellees' interpretation would be to effectively substitute the word "and" for the "or" used. It is established that as a general rule of statutory construction, the two terms are not ordinarily interchangeable. *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 30 (Tex. 1978); *Bayou Pipeline Corp. v. Railroad Commission*, 568 S.W.2d 122, 125 (Tex. 1978).

We agree that section 141.032 of the Code by its terms does not require "seniority pay" to civil service employees. *See City of Harlingen v. Avila*, 942 S.W.2d 49, 52 (Tex. App.--Corpus Christi 1997, writ denied); *International Ass'n of Fire Fighters v. Baytown,* 837 S.W.2d 783, 787 (Tex. App.--Houston [1st Dist.] 1992, writ denied); *City of Beaumont v. Bond,* 546 S.W.2d 407, 411 (Tex. Civ. App.--Beaumont 1977, writ ref'd n.r.e.).

We also hold that the provision in section 143.038(b) of the Code that requires the City to pay the employee, while temporarily performing duties in a higher classification job, "the base salary of the higher position plus the person's own longevity or seniority pay," means that he or she is statutorily entitled to either longevity or seniority pay but not both. Because the Code does not define the manner by which "seniority pay" may be calculated, if the City voluntarily chooses to compensate the temporarily assigned employee in that

way, it is allowed to devise its own compensation system as long as it does not violate Chapter 143 of the Code. *See Willis v. City of Lubbock*, 385 S.W.2d 617, 618 (Tex. Civ. App.--Amarillo 1964, writ ref'd n.r.e.). This decision requires us to give an affirmative answer to the City's issue number 2 in which it inquires if the trial court erred in determining if it had improperly paid its firefighters pursuant to section 143.038(b) of the Local Government Code.

Having made that decision, we must decide the City's third issue in which it asserts that it paid its firefighters properly under section 143.041 of the Code. It is appellees' contention that if the City's argument that "longevity pay" and "seniority pay" are not synonymous is accepted by this court, then the step increases within classifications are not allowable as seniority pay supplements because the City already pays longevity under section 141.032. That being so, they contend, the step increases constitute impermissible differences in base salary in violation of the "same base salary" requirement of § 143.041(b) of the Code and the case should be remanded to the trial court for a determination of back pay to which appellees would be entitled because of the differences.

However, although the City is not required to pay "seniority pay" for time in a classification, and there is no set method for paying this type of compensation, it may voluntarily opt to do so and a step-based system by which a city pays its employees increments based on the length of service within a classification is a permissible way of doing so. *See Intern. Ass'n of Fire Fighters v. Baytown*, 857 S.W. at 787. We agree that this dispute is analogous to the one before this court in *Willis v. City of Lubbock*, 385 S.W.2d 617 (Tex. Civ. App.--Amarillo 1964, writ ref'd n.r.e.). In that case, the appellant

14

had sued the City asserting it had not properly paid him his accumulated vacation pay upon his resignation from the police department. The court noted that there was no mandatory provision in the Civil Service Act that required the City to pay its employees for accumulated vacation time as part of the severance or termination pay of employees leaving the service. Thus, it reasoned, because the City had voluntarily adopted a policy of paying this vacation leave to those leaving the service, "it follows the City's method of calculating such payment is not subject to judicial review." *Id*. at 618. Likewise, the City's voluntarily adopted seniority plan does not violate the Civil Service Act and its method of calculating payments under the plan is not subject to judicial review. Thus, we must also give an affirmative answer to the City's third issue.

Our disposition of the City's second and third issues requires us to reverse the judgment of the trial court and render judgment here that appellees take nothing by their suit.

John T. Boyd
Senior Justice

15