**MIDLAND INDEPENDENT SCHOOL DISTRICT and Tom Holland, Appellants,**

v.

**Laura Gina WATLEY, Appellee.**

**No. 11–04–00262–CV.**

Court of Appeals of Texas, Eastland.

May 25, 2006.

---

Joshua A. Skinner, Thomas P. Brandt, Nellie Gomez Hooper, Fanning Harper & Martinson, P.C., Dallas, for appellants.

Max E. Wright, Jill C. Pennington, Marcia J. Denny, Wright & Jackson, P.C., Midland, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and McCLOUD, S.J.[*]

## OPINION

JIM R. WRIGHT, Chief Justice.

In this interlocutory appeal, Midland Independent School District (MISD) and Tom Holland (MISD's assistant superintendent for personnel) appeal the trial court's denial of MISD's plea to the jurisdiction and Holland's motion for summary judgment. We reverse and render.

### Background Facts

Laura Gina Watley was employed by MISD from September 1990 until June 2000. On or about February 10, 2000, Watley was asked to prepare a written statement concerning the conduct of her supervisor, Dr. Ruby Morris, who was under investigation in a grievance proceeding. Upon learning of this statement, Dr. Morris allegedly demanded that Watley prepare a fraudulent letter recanting her statement. On March 10, 2000, Dr. Morris fired Watley allegedly because Watley refused to redact her statement. In response to Dr. Morris's action, Watley prepared a written grievance statement and submitted it to Dan Walkenshaw, MISD Chief of Police.

On March 13, 2000, Holland reinstated Watley to a new position at MISD with the same pay and benefits as her previous position. As a result of her reinstatement, Watley withdrew her grievance.

On June 2, 2000, Watley was informed by Holland that she would no longer be employed by MISD. The parties disagree with respect to MISD's characterization of Watley's separation of employment on June 2, 2000. MISD describes Watley's separation as a termination as a result of her failure to attend a mandatory meeting. Watley contends that MISD informed her that she had "voluntarily resigned" for her failure to attend the required meeting. Watley further contends that she "did not discover that her resignation was actually a termination" until after the filing of the underlying lawsuit. As set forth in greater detail below, Watley relies heavily on her characterization of the June 2, 2000 separation as a resignation rather than a termination. Irrespective of its characterization, Watley did not file a grievance after the June 2, 2000 separation from employment.

On August 17, 2001, Watley filed suit against MISD, Holland, and the Estate of Dr. Ruby Morris. Watley alleged a cause of action under the Texas Whistleblower Act[1] and also alleged claims for retaliatory discharge, assault, intentional infliction of emotional distress, and intentional misrepresentation. On September 19, 2002, MISD filed a plea to the jurisdiction, and Holland filed a motion for summary judgment. The trial court denied both the plea to the jurisdiction and the motion for summary judgment. This accelerated appeal followed.

### MISD's Plea to the Jurisdiction

This court has jurisdiction to review an interlocutory order of a district court that grants or denies a plea to the jurisdiction by a governmental unit. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2005). We

[*] Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 2004).

review de novo the trial court's ruling on a plea to the jurisdiction. *See United Water Servs., Inc. v. City of Houston,* 137 S.W.3d 747, 749 (Tex.App.-Houston [1st Dist.] 2004, pet. filed). A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000). We do not look at the merits of the case. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). We construe the pleadings liberally in favor of conferring jurisdiction. *Texas Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002).

In three issues on appeal, MISD argues that it is entitled to governmental immunity from Watley's Whistleblower–Act claim; from her claim of retaliatory discharge; and from her claims of assault, intentional infliction of emotional distress, and intentional misrepresentation.

### The Whistleblower–Act Claim Against MISD

■ MISD argues that Watley failed to comply with the requirements of TEX. GOV'T CODE ANN. § 554.006 (Vernon 2004) regarding the timely initiation of administrative remedies before filing suit under the Whistleblower Act. Section 554.006(a) requires a claimant under the Whistleblower Act to initiate "grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under [the Act]." Section 554.006(b) requires the grievance procedures to be instituted not

later than ninety days after the alleged violation of the Whistleblower Act occurred or was discovered by the employee by reasonable diligence. Section 554.006(d) provides that, if a final decision is not rendered on the grievance before the sixty-first day after the grievance is initiated, the employee may elect to either (1) exhaust the applicable grievance proceedings prior to filing suit or (2) terminate the proceedings and bring suit within the applicable limitations period set out in Section 554.005.

■ Watley contends in her brief that she complied with the requirements of Section 554.006 in the following manner:

Ms. Watley was required to initiate grievance proceedings, not exhaust them. She initiated her grievance against MISD on or about March 10, 2000, one business day after her termination. MISD rehired Ms. Watley on March 13, 2000, per the express instruction of the MISD superintendent and conditioned on the withdrawal of Ms. Watley's grievance. Ultimately, Ms. Watley resigned for failure to attend a meeting she never knew about.[2] MISD now contends that Ms. Watley should be precluded from filing suit even though they thwarted Ms. Watley's March grievance and never notified her of a subsequent termination. Ms. Watley adequately initiated the grievance proceedings, and should not be barred from raising her Whistleblower claim.

We agree that Watley is not required to exhaust administrative remedies prior to filing suit under the Whistleblower Act. *See University of Texas Medical Branch at Galveston v. Barrett,* 159 S.W.3d 631,

---

**2.** The characterization of the June 2, 2000 separation from employment contained in Watley's brief differs from her description of the event in her second amended original petition wherein she stated: "Subsequently,

Ms. Carrasco, the MISD personnel coordinator, informed Ms. Watley that she had been terminated and would not be assured a job the following year as promised by Dr. Holland."

632 (Tex.2005). However, we disagree with Watley's contention that she satisfied the requirement of Section 554.006(a) to timely initiate grievance or appeal procedures prior to filing suit.

Section 554.006(b) provides that "[t]he employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence." Watley alleged two violations of the Whistleblower Act in her second amended original petition: (1) the March 10, 2000 termination; and (2) the June 2, 2000 termination.

Watley essentially asserts that the termination which occurred on March 10, 2000, was the only event requiring her compliance with Section 554.006(a). She bases this assertion on two contentions: (1) MISD rehired her on March 13, 2000, in order to obtain the withdrawal of her grievance; and (2) she did know that the separation which occurred on June 2, 2000, was a termination at the time that it occurred.

Watley contends that she complied with the requirements of Section 554.006 when she filed a grievance after the March 10, 2000 termination. While Watley initiated a grievance in the technical sense after the March 10, 2000 termination, she immediately withdrew it when MISD rehired her. We conclude that the mere filing of a grievance, followed by the immediate withdrawal, does not satisfy the requirements of Section 554.006 because it does not provide the governmental entity with an opportunity to resolve the employee's whistleblower complaint under its applicable administrative procedures prior to suit being filed. To hold otherwise would render the requirements of Section 554.006 meaningless.

Even if we assume that Watley is correct in asserting that MISD rehired her in an effort to thwart her grievance, we cannot ignore the events that transpired afterwards. Watley's subsequent period of employment only lasted from March 13, 2000, until June 2, 2000. Irrespective of the characterization of the separation from employment occurring on June 2, 2000, as either a termination or resignation, it was clearly involuntary.[3] After the separation

**3.** Watley testified as follows with regard to her beliefs immediately following the June 2, 2000 separation:

> Q: Okay. And about an hour after your phone conversation with Tom Holland on June 2nd, 2000,—
> A: Uh-huh.
> Q:—a lightbulb went off in your head, right?
> A: Yes.
> Q: And at that point, you knew that Tom Holland had lied to you, right?
> A: Right.
> Q: Or you believed he lied to you, right?
> A: No, he lied to me.
> Q: Okay. You knew you didn't have a job?
> A: Right.
> Q: And you knew that the fact that you not having a job was traceable back to your

> submission of Deposition Exhibit Number 1, right?
> A: Right.
> Q: Okay. At that point—or since that point when the lightbulb went off and you realized all of this, have you ever filed any grievance with Midland ISD?
> A: No.
> Q: Have you pursued any grievance with the Commissioner of Education with the Texas Education Agency?
> A: No.
> Q: Have you filed any grievance or charge of discrimination with the EEOC or the Texas Commission on Human Rights?
> A: No.

When asked why she did not file a grievance, Watley responded, "I don't know. I think the breath was knocked out of me. You know, I was 40 years old almost and had to go find a

occurring on June 2, 2000, Watley did not attempt to either re-institute her previous grievance with regard to the March 10, 2000, termination or file a new grievance with respect to the involuntary separation which occurred on June 2, 2000. Instead, she waited for more than one year after the June 2, 2000, separation before filing suit.[4]

As noted previously, Section 554.006(b) requires the claimant to invoke grievance proceedings within 90 days of when the alleged violation "(1) occurred[ ] or (2) *was discovered by the employee through reasonable diligence*" (emphasis added). Given the involuntary nature of the June 2, 2000 termination, Watley should have known on that date through the exercise of reasonable diligence of the alleged violations of the Whistleblower Act for which she now seeks a recovery.

In summary, we find that Watley did not initiate grievance proceedings as required by Section 554.006. She immediately withdrew the grievance filed after the March 10, 2000 termination without ever attempting to re-institute it prior to filing suit. Furthermore, she did not institute a grievance of any kind after the involuntary separation from employment occurring on June 2, 2000. These omissions are juris-

dictional defects which preclude Watley from bringing her Whistleblower claim. *Montgomery County Hosp. Dist. v. Smith,* 181 S.W.3d 844, 850–53 (Tex.App.-Beaumont 2005, no pet.).[5] We sustain MISD's first issue on appeal.

## *Watley's Retaliatory–Discharge Claim Against MISD*

In addition to her claim under the Whistleblower Act, Watley alleged a claim against MISD for retaliatory discharge. MISD addresses this claim in its second issue. Watley cited TEX. LAB.CODE ANN. § 21.055 (Vernon 1996) in her trial court pleadings in connection with this claim. She has subsequently asserted in her appellate briefs that her claim for retaliatory discharge is a common law claim rather than a statutory claim under Section 21.055.[6] Watley has additionally asserted a claim for retaliatory discharge under *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985), in her appellate briefs.

■ MISD contends that a common law cause of action for retaliatory discharge does not exist. We agree. The Dallas Court of Appeals rejected an argument for the creation of a common law claim for retaliatory discharge in *Guient v. Hogan*

new job. So I didn't do anything but go look for a new job."

4. We note that the applicable limitations period for either filing suit or initiating grievance proceedings under the Whistleblower Act is ninety days. *See* Sections 554.005, 554.006(b).

5. In *Barrett,* the supreme court expressly declined to resolve whether the failure of an aggrieved public employee to initiate a grievance procedure in compliance with Section 554.006 constitutes a jurisdictional defect. 159 S.W.3d at 632–33. The Beaumont Court of Appeals subsequently addressed this question in *Smith.* The court held in *Smith* that the claimant's failure to initiate grievance proceedings constituted a jurisdictional defect

under Section 554.006 which barred suit. 181 S.W.3d at 850–53. In reaching its holding in *Smith,* the court noted that the Texas Legislature recently added the following language to TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2005): "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." *Id.* at 851.

6. In light of Watley's assertion of a common law claim for retaliatory discharge, we need not consider MISD's contention that Watley did not exhaust her administrative remedies in connection with a claim under Section 21.055.

& Associates, Inc., No. 05–98–01560–CV, 2001 WL 722559 (Tex.App.-Dallas June 28, 2001, pet. denied)(not designated for publication). The court determined that a common law claim for retaliatory discharge is inconsistent with the general rule that an action for wrongful termination will not lie in favor of an at-will employee except in very limited exceptions, most of which have been created by statute. We agree with the court's holding in *Guient.*

■ The Texas Supreme Court created a common law cause of action to protect at-will employees in *Sabine Pilot* for cases in which an employee is terminated for refusing to perform an illegal act. *Sabine Pilot*, 687 S.W.2d at 735. However, the exception created by *Sabine Pilot* does not overcome a governmental entity's sovereign immunity. *See Salazar v. Lopez*, 88 S.W.3d 351, 352–53 (Tex.App.-San Antonio 2002, no pet.); *Univ. of Texas Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.); *Carroll v. Black*, 938 S.W.2d 134, 135 (Tex.App.-Waco 1996, writ denied). MISD's second issue is sustained.

### Watley's Other Claims Against MISD

■ Watley also asserted a claim against MISD for intentional infliction of emotional distress. MISD addresses this claim in its third issue. Since this claim involves the allegation of an intentional tort, we find that TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 2005) precludes it from being asserted against MISD under the Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 2005 & Supp. 2005).

■ Sovereign immunity encompasses two distinct areas: (1) immunity from suit and (2) immunity from liability. *Gendreau v. Med. Arts Hosp.*, 54 S.W.3d

877, 878 (Tex.App.-Eastland 2001, pet. denied). Immunity from suit bars an action against the school district unless consent to sue has been expressly granted. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999).

Watley argues that sovereign immunity for school districts has been waived by TEX. EDUC.CODE ANN. § 11.151(a) (Vernon Supp.2005) which provides:

> The trustees of an independent school district constitute a body corporate and in the name of the district may acquire and hold real and personal property, *sue and be sued,* and receive bequests and donations or other moneys or funds coming legally into their hands (emphasis added).

In *Lamesa Independent School District v. Booe*, No. 11–03–00394–CV, 2005 WL 2090670 (Tex.App.-Eastland Aug.31, 2005, pet. filed)(mem.op.), this court held that the "sue and be sued" language of Section 11.151(a) clearly and unambiguously waives a school district's immunity from suit. Our decision was based on the holding of the Texas Supreme Court that "sue and be sued" language is "quite plain and gives general consent" for a governmental entity to be sued. *Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970); *see also Gene Duke Builders, Inc. v. Abilene Hous. Auth.*, 168 S.W.3d 215, 221 (Tex.App.-Eastland 2005, pet. filed).

However, *Lamesa ISD* concerned a claim for breach of contract. Our decision in that case was influenced in part by the recent passage of TEX. LOC. GOV'T CODE ANN. §§ 271.151–.160 (Vernon 2005), which expressly waives immunity from suit for local governmental entities including public school districts that enter into contracts for the provision of goods and services. In this case, no breach of contract has been

alleged. Instead, Watley is alleging tort claims which are governed by the Texas Tort Claims Act.

 The Tort Claims Act is a special provision that waives immunity from suit only to a limited degree. *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 450 (Tex.App.-Fort Worth 2001, no pet.). Section 11.151(a), on the other hand, is a general waiver of immunity from suit. If a general statutory provision conflicts with a special provision, the provisions shall be construed, if possible, to give effect to both. *See* TEX. GOV'T CODE ANN. § 311.026(a) (Vernon 2005). Additionally, if two statutes cannot be reconciled, we give precedence "to the [Tort Claims Act] as the later-enacted, more specific statute controlling waiver of sovereign immunity from both suit and liability in tort cases." *City of San Antonio v. Butler*, 131 S.W.3d 170, 176 (Tex.App.-San Antonio 2004, pet. filed); *see* TEX. GOV'T CODE ANN. § 311.025 (Vernon 2005). While we believe that Section 11.151(a) of the Education Code is a general waiver of immunity from suit, we conclude that the application of Section 11.151(a) is limited by the Tort Claims Act.

Under the Tort Claims Act, a governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Section 101.021. There is no waiver of immunity for intentional torts under the Tort Claims Act. *See* Section 101.057. The trial court, therefore, does not have jurisdiction over Watley's claim for intentional infliction of emotional distress against MISD.[7] We sustain MISD's third issue on appeal.[8]

*Holland's Motion for Summary Judgment*

We next turn our attention to Holland's motion for summary judgment. Holland asserted the affirmative defenses of derivative immunity and educator immunity in his motion for summary judgment which the trial court denied. A person may appeal from an interlocutory order of a district court that denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of

---

7. An intentional tort, as opposed to negligence, is one in which the actor has the specific intent to inflict injury. *See Eastland County Coop. Dispatch v. Poyner*, 64 S.W.3d 182, 192 (Tex.App.-Eastland 2001, pet. denied). To the extent that Watley's common law claim for retaliatory discharge might be viable, it would also be in the nature of an intentional tort.

8. MISD's third issue also addresses claims for assault and intentional misrepresentation which Watley asserted in her pleadings. Watley contends in her motion for rehearing that she did not assert claims for assault and intentional misrepresentation against MISD. Assuming, without deciding, that Watley asserted claims of assault and intentional misrepresentation against MISD, these claims would also be barred by Section 101.057 of the Tort Claims Act because they are also intentional torts.

the state. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2005).

Holland's derivative immunity contention is premised on the former version of TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 2005). The language of former Section 101.106, as written at the time this lawsuit was filed, provided: "A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." [9] Thus, the claims asserted against Holland are barred under former Section 101.106 if they involve the same subject matter as the claims asserted against MISD under the Tort Claims Act for which we have rendered judgment in favor of MISD on its plea to the jurisdiction. *See Harris County v. Sykes,* 136 S.W.3d 635 (Tex.2004).

■ Watley asserted claims against Holland for intentional infliction of emotional distress and intentional misrepresentation. Watley premised her claim of intentional infliction of emotional distress against Holland on his participation in her termination. In addition to naming Holland, Watley also identified MISD as a party liable to her for intentional infliction of emotional distress with respect to her termination.[10] We have previously determined that sovereign immunity under the Tort Claims Act has not been waived for this claim with respect to MISD. Accordingly, former Section 101.106 precludes Watley from asserting the same claim against Holland.

■ Watley attempts to distinguish her claim of intentional misrepresentation on the basis that she only asserted it against Holland. This fact is not controlling, however, because former Section 101.106 applies to actions involving the same subject matter. In *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 344 (Tex.1998), the supreme court interpreted the meaning of "the same subject matter" to mean: "arising out of the same actions, transactions, or occurrences." Watley premised her claim of intentional misrepresentation against Holland on his purported misrepresentation that she would have continued employment with MISD if she withdrew her grievance.

We conclude that Watley's claim for intentional misrepresentation against Holland arises from the same actions, transactions, and occurrences for which she seeks to impose liability against MISD under the Tort Claims Act. Watley is primarily seeking redress for her termination from employment with MISD with respect to her claims against MISD and Holland. The facts involved with her claim against Holland for intentional misrepresentation are part and parcel of her allegations regarding her wrongful termination claim. Accordingly, our determination that Watley's claims against MISD are not permitted by the Tort Claims Act confers derivative immunity upon Holland under Section 101.106. *See Coffey v. Johnson,* 142 S.W.3d 414, 418 (Tex.App.-Eastland 2004, no pet.). Accordingly, we sustain Holland's second issue on appeal. We need

9. This section was rewritten by Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 11.05 effective on September 1, 2003, and applies to actions filed on or after the effective date. *Section 101.106* as enacted in 1985 is the applicable version to this case.

10. Watley alleged as follows in her second amended original petition: "The wrongful termination of Ms. Watley by Dr. Morris, Tom Holland, Adelita Carrasco, and MISD collectively was likewise extreme and outrageous and caused severe emotional distress to Ms. Watley."

not address Holland's first issue on appeal concerning the issue of educator immunity because we hold that Holland is entitled to derivative immunity as a matter of law.

### Watley's Request to File a Reply Brief

Watley asserts in her motion for rehearing that we erred in failing to grant her motion to file a reply belief.[11] She has addressed in the motion for rehearing the matters which she would have raised in a reply brief. In light of our consideration of the matters raised in Watley's motion for rehearing, her complaint regarding the denial of her request to file a reply brief is moot.

### This Court's Ruling

We reverse the decision of the trial court and render judgment in favor of MISD and Holland.

---

11. We note that the Rules of Appellate Procedure provide that only an appellant may file a reply brief as a matter of right. *See* Tex.R.App. P. 38.3.